**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JULIE A. SU, Acting Secretary of Labor, United
States Department of Labor,

                        Plaintiff,

    v.                                      1:22-cv-00264 (AMN/DJS)

KWIAT EYE AND LASER SURGERY, PLLC,
and DR. DAVID KWIAT,

                        Defendants.

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **U.S. DEPARTMENT OF LABOR**<br>Office of the Solicitor<br>201 Varick Street<br>New York, NY 10014<br>*Attorneys for Plaintiff* | BERTHA M. ASTORGA, ESQ. |
| **HURWITZ FINE P.C.**<br>1300 Liberty Building<br>424 Main Street<br>Buffalo, NY 14202<br>*Attorneys for Defendants Kwiat Eye and*<br>*Laser Surgery, PLLC, and Dr. David Kwiat* | ANASTASIA M. MCCARTHY, ESQ.<br>MAXWELL C. RADLEY, ESQ.<br>DAVID R. ADAMS, ESQ.<br>JODY E. BRIANDI, ESQ.<br>MICHAEL F. PERLEY, ESQ.<br>SCOTT D. KAGAN, ESQ. |

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

In this action, Plaintiff United States Secretary of Labor ("Plaintiff") filed suit against Defendants Dr. David Kwiat ("Dr. Kwiat") and his business, Kwiat Eye and Laser Surgery, PLLC ("KELS"), alleging a single claim for retaliation pursuant to Section 11(c) of the Occupational Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. § 660(c) ("Section 11(c)"). Dkt. No. 1 (the "Complaint"). On July 28, 2023, the Court denied Dr. Kwiat's motion to dismiss the Complaint.

Dkt. No. 66.  Presently before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56") seeking to dismiss the Complaint in its entirety, Dkt. No. 91 ("Defendants' Motion"), and Plaintiff's motion for summary judgment pursuant to Rule 56 seeking judgment in her favor, injunctive relief, and an award of damages and costs, Dkt. No. 92 ("Plaintiff's Motion").  Plaintiff and Defendants each filed responses in opposition to the other's Motion, Dkt. Nos. 94 ("Defendants' Opposition"); 95 ("Plaintiff's Opposition"), and each replied in support of their respective Motion, Dkt. Nos. 96 ("Defendants' Reply"); 97 ("Plaintiff's Reply").  Additionally, before the Court is a Report-Recommendation and Order issued by United States Magistrate Judge Daniel J. Stewart recommending that the Court hold Dr. Kwiat in contempt and impose a $1,250 fine for his failure to comply with the Court's February 14, 2023 Discovery Order, Dkt. No. 28 (the "Discovery Order").   Dkt. No. 90 (the "Report-Recommendation").  Neither party has filed objections to the Report-Recommendation.

For the reasons set forth below, Defendants' Motion is denied, Plaintiff's Motion is granted in part and denied in part, and the Report-Recommendations is adopted in its entirety.

## II. STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment is properly granted only if, upon reviewing the evidence in the light most favorable to the nonmovant, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993).  A court first determines "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).  "When analyzing a summary judgment

motion, the court 'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Galeotti v. Cianbro Corp.*, No. 5:12-cv-00900 (MAD/TWD), 2013 WL 3207312, at *4 (N.D.N.Y. June 24, 2013) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36-37 (2d Cir. 1994)).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995) (citation omitted). To determine whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *accord Gibbs-Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir. 2002). A "material" fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir. 1997). A court should "grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative." *Schwimmer v. Kaladjian*, 988 F. Supp. 631, 638 (S.D.N.Y. 1997) (citing, *inter alia*, *Anderson*, 477 U.S. at 249-50).

B. **Review of a Report-Recommendation**

This Court reviews *de novo* those portions of a magistrate judge's report-recommendation that have been properly preserved with a specific objection. 28 U.S.C. § 636(b)(1)(C). If no specific objections have been filed, this Court reviews a magistrate judge's report-recommendation for clear error. *See Petersen v. Astrue*, 2 F. Supp. 3d 223, 229 (N.D.N.Y. 2012) (citing Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition). "When performing [ ] a 'clear error'

3

review, 'the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Dezarea W. v. Comm'r of Soc. Sec.*, No. 6:21-CV-01138 (MAD/TWD), 2023 WL 2552452, at *1 (N.D.N.Y. Mar. 17, 2023) (quoting *Canady v. Comm'r of Soc. Sec.*, No. 1:17-CV-0367 (GTS/WBC), 2017 WL 5484663, at *1 n.1 (N.D.N.Y. Nov. 14, 2017)). After appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

### III. DISCUSSION

#### A. Relevant Facts

Unless otherwise indicated, the following facts have been asserted by the parties in their statements of material facts with accurate record citations, and expressly admitted or not denied with a supporting record citation in response.

Dr. Kwiat was the sole owner and president of KELS, which provides ophthalmological services, including eye exams, eye screenings, diagnostic modalities for eye diseases, and outpatient treatment of medical eye disease out of its Amsterdam, New York office, for the period of time relevant to this action. Dkt. No. 94-8 at 1-2.[1] As part of his role, Dr. Kwiat had the authority to hire, discipline, and fire KELS employees. Dkt. No. 94-8 at 2.

The complainant in this action, Ms. Jenna Coolman ("Ms. Coolman"), was employed at KELS as an ophthalmological technician from July 2017 until February 24, 2021. Dkt. No. 95-1 at 1 (admitting to Dkt. No. 91-9 ¶ 5). As part of her role, Ms. Coolman's duties required her to be face-to-face with, or in close physical proximity to, KELS patients. Dkt. No. 94-8 at 3.

On March 7, 2020, the governor of New York State declared a Disaster Emergency in the

---

[1] Citations to docket entries utilize the pagination generated by CM/ECF docketing system and not the documents' internal pagination.

4

State amidst the threat posed by COVID-19, and a few weeks later the State issued a series of health and safety mandates, called "PAUSE" mandates, to address the dangers posed by the virus. Dkt. No. 94-8 at 4.  Effective April 15, 2020, pursuant to an executive order, New York State required that "any employees who are present in the workplace shall be provided *and shall wear face coverings* when in direct contact with customers or members of the public." Dkt. No. 92-16 at 3 (emphasis added) (the "Mask Mandate").[2]  Defendants did not require KELS employees to wear masks in compliance with the Mask Mandate, which they maintain only required that masks be made available.  *See* Dkt. No. 94-8 at 5 (disputing that Defendants did not comply with the various COVID mandates because, *inter alia*, "Dr. Kwiat supplied masks for the practice's employees," and all employees were "permitted" "to wear a mask to work").  Additionally, by mid-2020, New York State required essential businesses to implement daily health screening practices, such as questionnaires and temperature checks (the "Screening Mandate"), which KELS never implemented.  *Id*. at 5; *cf*. Dkt. No. 91-9 at 2 (listing KELS's COVID precautions).

Following Ms. Coolman's complaints about COVID Mandate compliance internally at KELS, which her manager perceived as "general complaints and not official complaints[,]" Dkt. No. 94-8 at 6, she submitted complaints about the same to the New York State Department of Health ("NYSDOH") in December 2020 and again in January 2021.  *Id*. at 7.  Ms. Coolman's complaints to NYSDOH included allegations that KELS was not complying with the Mask Mandate or Screening Mandate. Dkt. No. 91-9 at 4-5; Dkt. No. 94-8 at 7.  Following up on Ms. Coolman's complaints, the NYSDOH contacted Dr. Kwiat on February 24, 2021, and Dr. Kwiat fired Ms. Coolman that same morning after confirming that she had complained to the NYSDOH

---

[2] Defendants' attempt to refute Plaintiff's asserted fact on this issue is based on a periodical's characterization of the executive order's Mask Mandate and not the executive order itself. *Compare* Dkt. No. 94-8 at 4-5 (citing Dkt. No. 92-15), *with* Dkt. No. 92-16 at 3.

5

about compliance with the COVID Mandates at KELS. Dkt. No. 94-8 at 8. Aside from the conversation in which she was terminated, Ms. Coolman was not warned about or disciplined for her conduct or performance at KELS. *Id*. at 9-10. Defendants acknowledge that they fired Ms. Coolman for submitting complaints to NYSDOH, but argue that such adverse employment action resulted from the fact that the complaints were false. *Id*. at 8-9; *see also* Dkt. No. 91-9 at 5 ("Dr. Kwiat . . . terminated Ms. Coolman's employment because he *suspected* she made a false report to the NYSDOH in an effort to close his practice.") (emphasis added). Defendants did not investigate Ms. Coolman's concerns. Dkt. No. 94-8 at 9.

    **B.**    **OSHA Section 11(c)**

"Section 11 . . . prohibits employers from retaliating against their employees for reporting possible safety and health issues." *Perez v. Champagne Demolition, LLC*, No. 1:12-CV-1278 (FJS/TWD), 2016 WL 3629095, at *3 (N.D.N.Y. June 29, 2016) (citing 29 U.S.C. § 660(c)(1)). The Department of Labor interprets Section 11(c) to include "complaints made to State or local agencies regarding occupational safety and health conditions" as conduct protected from employer retaliation, so long as such complaints "relate to conditions at the workplace, as distinguished from complaints touching only upon general public safety and health." 29 C.F.R. § 1977.9(b). An employee who believes she has been discriminated against in violation of Section 11(c)(1) may file a complaint with the Secretary of Labor, who will then investigate the claim. 29 U.S.C. § 660(c)(2). If the Secretary determines that a violation has occurred, she must bring an action in federal court. *Id.* OSHA is remedial and preventative in nature and is to be liberally construed to effectuate its congressional purpose. *Su v. Kwiat Eye & Laser Surgery, PLLC*, No. 1:22-cv-00264 (AMN/DJS), 2023 WL 4847315, at *3 (N.D.N.Y. July 28, 2023) (quotation omitted); *accord New York State Elec. & Gas Corp. v. Sec'y of Lab.*, 88 F.3d 98, 103 (2d Cir. 1996).

"To prevail upon a Section 11(c) retaliation claim [at summary judgment], the Secretary must prove (1) the whistleblower's participation in a protected activity, (2) a subsequent adverse action by the employer against the whistleblower employee, and (3) a causal connection between the two." *Champagne Demolition*, 2016 WL 3629095, at *3. As to the first element, "'complaints to employers, if made in good faith' regarding occupational safety and health matters, are protected under OSHA." *Id*. (quoting 29 C.F.R. § 1977.9(c)). Section 11(c) also protects "complaints made to State or local agencies regarding occupational safety and health conditions" as conduct protected from employer retaliation, so long as such complaints "relate to conditions at the workplace, as distinguished from complaints touching only upon general public safety and health." 29 C.F.R. § 1977.9(b); *see also Lopez v. Burris Logistics Co.*, 952 F. Supp. 2d 396, 419 (D. Conn. 2013), *on reconsideration* (Sept. 23, 2013). As to the second element, an action is "materially adverse" when it would likely "dissuade or deter a reasonable worker from exercising his legal rights." *Perez v. Eastern Awning Sys.*, No. 3:15-cv-01692 (MPS), 2018 WL 4926447, at *7 (D. Conn. Oct. 10, 2018) (citing *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 163 (2d Cir. 2011)). Accordingly, under Section 11(c)(1) discharging an employee for filing a complaint "under or related to [OSHA]" or for "statements given in the course of . . . investigations" is an adverse action. *Su v. Milford Sports Bars, LLC.*, No. 3:22-cv-321 (VAB), 2023 WL 10509599, at *6 (D. Conn. Dec. 15, 2023) (quoting respectively 29 U.S.C. § 660(c)(1) and 29 C.F.R. § 1977.11). Courts in the Second Circuit evaluating Section 11(c) retaliation claims have also found that selectively enforcing employment policies can qualify as adverse action. *Eastern Awning*, 2018 WL 4926447, at *8 (citing *Valenti v. Massapequa Union Free Sch. Distr.*, No. 09-cv-977 (JFB), 2010 WL 475203, at *5 (E.D.N.Y. Feb. 5, 2010)). Finally, "causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other

7

circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *French v. Albany Med. Ctr.*, No. 1:22-CV-252 (MAD/DJS), 2024 WL 2958461, at *16 (N.D.N.Y. June 12, 2024) (quoting *Mattera v. JPMorgan Chase Corp.*, 740 F. Supp. 2d 561, 581 (S.D.N.Y. 2010)).  Indirect proof through a temporal relationship "may be established 'by showing that the protected activity was closely followed in time by the adverse action.'" *Mullins v. City of N.Y.*, 626 F.3d 47, 53 (2d Cir. 2010) (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)); *see, e.g.*, *Milford Sports Bars*, 2023 WL 10509599, at *5 (finding a causal connection where "the events occurred the same day or within a few days and no other explanation was provided").

"Additionally, Section 11(c) claims are subject to the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973): Plaintiff's burden to show *prima facie* case; Defendant's burden to articulate a legitimate, nondiscriminatory reason for the employment action; and Plaintiff's burden to show that Defendant's reason was pretextual." *Champagne Demolition*, 2016 WL 3629095, at *3.  A plaintiff's burden of establishing a *prima facie* case is "minimal" and "not onerous." *Scaria v. Rubin*, 117 F.3d 652, 654 (2d Cir. 1997) (*per curiam*); *accord St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).  At the third step "'the plaintiff must prove that the desire to retaliate was a but-for cause of the challenged employment action'" which "'does not require proof that retaliation was the only cause of the employer's action' [but only] 'that the adverse action would not have occurred in the absence of the retaliatory motive.'" *Carter v. TD Bank, N.A.*, No. 23-950, 2024 WL 2828470, at *3 (2d Cir. June 4, 2024) (quoting respectively *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015), and *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013)).  "[A] plaintiff is not required to

demonstrate the falsity of the [defendant's] proffered reason[s,]" *Bart v. Golub Corp.*, 96 F.4th 566, 570 (2d Cir. 2024), "'but only that they were not the only reasons and that a prohibited factor was at least one of the motivating factors' for the decision." *Wheeler v. Praxair Surface Techs., Inc.*, No. 21 CIV. 1165 (PAE), 2023 WL 6282903, at *14 (S.D.N.Y. Sept. 26, 2023) (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008)).

### C. The Summary Judgment Motions

#### 1. Defendants Are Liable for Violating Section 11(c)

Defendants all but concede liability for the *prima facie* claim of retaliation under Section 11(c): "Dr. Kwiat confirmed that Ms. Coolman was terminated for filing a false complaint with the NYSDOH." Dkt. No. 94-7 at 16 (citing Dkt. No. 94-3 at 104:3-22); *see, e.g.*, *Milford Sports Bar*, 2023 WL 10509599, at *5 (finding a causal connection between the protected activity and the adverse action "because the events occurred [on] the same day"). Notwithstanding their apparent concession, Defendants have two primary arguments in their Motion and in opposition to Plaintiff's Motion. First, Defendants argue that Plaintiff cannot meet the first element of her retaliation claim because "all of Ms. Coolman's complaints, whether in the office or as directed to the NYSDOH, touch only upon general public safety and health concerns arising from the COVID-19 pandemic" and thus are not protected by Section 11(c). Dkt. No. 91-8 at 13 (citing 29 C.F.R. § 1977.9(b); *Kulmann v. Yale-New Haven Hosp.*, No. NNHCV106010414, 2012 WL 234218, at *3 (Conn. Super. Ct. Jan. 4, 2012)). Second, Defendants argue that "[b]ecause Ms. Coolman's false complaints were not made in good faith, they do not qualify for the protections of OSHA and, more importantly, they form a legitimate and non-discriminatory basis for the termination of her employment." Dkt. No. 94-7 at 14-15; *accord* Dkt. No. 91-8 at 13-15. Thus, Defendants argue that Ms. Coolman was not fired for complaining to the NYSDOH, but rather because the

9

complaints were false. While this articulation meets Defendants' modest burden at the second step of the *McDonnell Douglas* analysis, neither of Defendants' arguments is sufficient at the third step.

First, Defendants attempt to frame Ms. Coolman's complaints as concerning "patient well-being and management" and not "about occupation-specific risks related to COVID-19." Dkt. No. 96 at 7. It is undisputed, however, that Ms. Coolman's specific concern about patients' health was that they would spread their illness in the workplace to her or other employees because KELS did not comply with the Mask or Screening Mandates prior to patients' contact with KELS employees. *See id*. at 8 (noting that Ms. Coolman testified at her deposition that her complaint concerned "not checking temperatures o[f] patients, not every patient wearing masks. We had patients [ ] coming in who tested positive for COVID.") (quoting Dkt. No. 91-4 at 43:18-22).[3] The fact that the risk of contracting a highly contagious illness exists outside of the workplace does not render enhanced risks in the workplace as a result of required job responsibilities out of the purview of OSHA. Indeed, Section 11(c) does not require a plaintiff to demonstrate that the employee reported an actual violation of the law, but merely that the report concerned health and safety in the workplace. *See Walsh v. Cmty. Health Ctr. of Richmond, Inc.*, No. 21-CV-3094 (ARR) (TAM), 2022 WL 4539264, at *2 (E.D.N.Y. Sept. 28, 2022) (contrasting Section 11(c) to New York Labor Law Section 740 which requires a "plaintiff to demonstrate that she reported an actual violation of the law"); *accord Champagne Demolition*, 2016 WL 3629095, at *5.

Second, Defendants argue that Ms. Coolman's complaints internally and to NYSDOH were not protected activity because they were not made in good faith since she did not have firsthand knowledge of the issues, such as any particular patient's COVID status, and she knew that KELS

---

[3] Defendants are similarly incorrect that Ms. Coolman's deposition testimony would not provide admissible evidence that Defendants retaliated against her for making complaints about conditions at the workplace, as opposed to only touching on general public safety and health.

10

had taken steps toward compliance with the Mandates, or that some individuals at KELS had voluntarily complied. Dkt. No. 91-8 at 13-15. However, Ms. Coolman's complaints concerned a matter about which she had firsthand knowledge – KELS's compliance with the Screening and Mask Mandates. Defendants do not seriously dispute that they were in violation of the COVID Mandates, instead they only aver that they took steps to follow the Mandates, but acknowledge that they did not require compliance. *See supra* § IV.A.

As for a legitimate, nondiscriminatory reason for the termination, Defendants argue that Ms. Coolman made a false report to NYSDOH in order to close down KELS, which conduct KELS could punish without violating Section 11(c). Dkt. No. 94-7 at 14. However, a complaint to a state health agency need only be based on a good faith, reasonable belief. *See Champagne Demolition*, 2016 WL 3629095, at *3; *accord Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 148 (2d Cir. 2014) (observing, in the Title VII retaliation context, that a plaintiff "need only demonstrate that she had a good faith, reasonable belief that the underlying challenged actions of the employer violated the law") (quotation omitted). Here, as noted above, there is evidence that Ms. Coolman's complaints were made based on a good faith, reasonable belief that KELS was actively violating and would not come into compliance with the Mandates without outside assistance. *See supra* § IV.A. And as for Defendants' burden, no reasonable juror could find that Ms. Coolman's complaints were made in bad faith for the purpose of shuttering KELS since the outcome of her complaint would have been an investigation, not an automatic shuttering of KELS. Dkt. 94-8 ¶ 57. Instead, the Court finds on the ample record before it that Defendants' argument is at best pretext since there are no contemporary indications that Defendants did not believe Ms. Coolman's complaints to be accurate, and indeed she was terminated immediately upon confirmation that she had complained to NYSDOH, despite the fact that she had never been

11

disciplined prior to that time. *See, e.g.*, *Eastern Awning*, 2018 WL 4926447 at *8 (finding a temporal connection between the protected activity and the adverse action when employees were barred from returning to work since an OSHA investigator arrived at the workplace for an inspection after one of the employees had filed a complaint with OSHA). Defendants further concede that Dr. Kwiat's actions contradicted KELS's internal policy in light of his testimony that if an employee raised concerns about COVID Mandate adherence, he would discuss the concerns with them. Dkt. 92-1 at 18. However, Dr. Kwiat did not discuss Ms. Coolman's concerns with her before her termination, *id.*, and did not utilize KELS's progressive discipline system with Ms. Coolman, which entails issuing a verbal warning, then a written warning, before terminating an employee. Dkt. No. 94-8 ¶ 57; *see, e.g.*, *Chao v. Party Rental Enters., Inc.*, No. 5:07-CV-0449 (NAM/GHL), 2008 WL 3851812, at *9 (N.D.N.Y. Aug. 15, 2008) (finding a defendant's showing inadequate where it did not "elaborate on a single fact concerning the inadequacy of [the plaintiff] as an employee, nor does he explain why, if indeed her employment record was so poor, he waited until after she had complained to DOL about safety conditions to terminate her"); *Eastern Awning*, at *8 (selectively enforcing employment policies can qualify as adverse action in retaliation claims);[4] *cf. Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001), *as amended* (June 6, 2001) (affirming dismissal of a retaliation claim where "the adverse employment actions were both part, and the ultimate product, of 'an extensive period of progressive discipline'").

Accordingly, Plaintiff's Motion is granted to the extent that Defendants Dr. Kwiat and

---

[4] In *Eastern Awning*, a supervisor "testified that, despite frequent unexcused absenteeism among Eastern Awning employees, he knew of no employees who had been terminated for missing work in the ten years he had worked for the company" such that the defendant there had selectively enforced absenteeism policies against an employee "which is itself sufficient for adverse action in the retaliation context." 2018 WL 4926447 at *8.

KELS are liable for violating Section 11(c).[5]  The Court next considers the relief Plaintiff seeks.

### 2. Injunctive Relief

Plaintiff seeks an order that would enjoin "Defendants from future violations of Section 11(c), require Defendants to post a notice that they cannot discriminate against employees for engaging in protected activities, and require Defendants to expunge [negative] references to Ms. Coolman from personnel and company records and provide a neutral referral." Dkt. No. 92-1 at 28.  Defendants' Opposition does not address Plaintiff's arguments in support of the request for injunctive relief in Plaintiff's Motion.  *See generally* Dkt. No. 94-7.  "[I]t is well-settled that a court may treat as conceded any argument to which a [non-moving] party does not respond." *Champagne Demolition*, 2016 WL 3629095, at *3 (citing *Rusyniak v. Gensini*, No. 5:07-CV-0279 (GTS/GHL), 2009 WL 3672105, *1 n.1 (N.D.N.Y. Oct. 30, 2009)).  "Under such circumstances, the moving party need only meet the 'modest' burden of showing that 'the legal arguments advanced in the movant's memorandum of law are *facially meritorious*.'" *Id.* (quoting *Sorrentino v. Barr Labs., Inc.*, No. 5:09-CV-0591 (GTS/RFT), 2010 WL 2026135, *4 (N.D.N.Y. May 20, 2010)).  Because Defendants did not address this argument, the Court considers whether Plaintiff's arguments are facially meritorious.

OSHA explicitly provides that a district court "shall have jurisdiction, for cause shown to restrain violations" of Section 11(c).  29 U.S.C. § 660(c)(2).  Courts have applied this equitable remedy to enjoin defendants from engaging in conduct that violates the law, from taking action against a wrongly terminated employee's future job prospects, and for posting notices about OSHA.  *See, e.g.*, *Donovan v. Com. Sewing, Inc.*, 562 F. Supp. 548, 556 (D. Conn. 1982) (after

---

[5] "The Court's decision to grant Plaintiff's motion for summary judgment renders Defendants' motion for summary judgment moot." *Champagne Demolition*, 2016 WL 3629095, at *7.

finding "that the defendant did violate [Section 11(c)] by discharging [the plaintiff] in retaliation for her health and safety complaints," the court enjoined the defendant company "and all persons acting or claiming to act in its behalf and interest, . . . from violating section 11(c)[,]" "from making any attempts to hinder [the plaintiff] from finding another job[,]" and required the defendant to post an OSHA notice); *see also* Dkt. No. 92-1 at 28 (collecting out-of-circuit cases).

Accordingly, Plaintiff has made the modest showing required in order to justify the unopposed request for relief, and Plaintiff's Motion is granted as to the requested injunctive relief.

### 3. Damages and Costs

Plaintiff's Motion seeks an award of $773,931.77 in damages. This sum is comprised of (a) $173,931.77 in compensatory damages for backpay, prejudgment interest, anticipated taxes due on the award, and front pay; (b) $100,000.00 in emotional distress damages; and (c) $500,000.00 in punitive damages. Dkt. No. 97 at 10-14. In support of the request for damages, Plaintiff submits a declaration of Mr. Edward Rhoades, a Supervisory Investigator with the United States Department of Labor, Occupational Safety and Health Administration. Dkt. No. 92-26 (the "Rhoades Declaration").[6] Additionally, Plaintiff seeks an award of costs, subject to Plaintiff's submission of a bill of costs following judgment. Dkt. No. 92-1 at 29.

OSHA provides that a court may order "all appropriate relief" including damages upon a finding of liability for a violation of Section 11(c). *See Reich v. Cambridgeport Air Sys., Inc.*, 26

---

[6] Mr. Rhoades calculated compensatory damages in this case as follows: (a) $49,625.71 in backpay, calculated by subtracting what Ms. Coolman would have earned at KELS from her termination in February 2021 through January 2024 by what she has earned at another hourly job she has worked since October 2021; (b) $4,948.61 in pre-judgment interest on the backpay owed, as of January 2024; (c) $30,294.22 in "tax gross up" to compensate Ms. Coolman for the increased federal and state tax burdens she would bear upon the award of the lump sum backpay award; and (d) $94,011.84 in front pay for two years of KELS income minus the income Ms. Coolman has earned at her new job. Dkt. No. 92-26 at 4-6; *see also* Dkt. No. 92-1 at 19-25.

14

F.3d 1187, 1194 (1st Cir. 1994) (concluding that "the statutory power to award 'all appropriate relief' gave the district court authority, where such relief is in fact appropriate, to award compensatory and even such traditional other relief as exemplary damages") (quoting Section 11(c)(2)). The common relief awarded for violations of Section 11(c) includes compensatory damages in the form of backpay, prejudgment interest, and front pay where reinstatement is not appropriate. *See Martin v. H.M.S. Direct Mail Serv., Inc.*, 936 F.2d 108, 109 (2d Cir. 1991) (*per curiam*) (holding that plaintiff's documentary evidence including "the precise amount of income that [the complainant] received during" the relevant period, subtracted from what the complainant would have received from the defendant "justif[ied] an award of back pay" and that prejudgment interest is "an appropriate component of a restitutionary back pay award" under OSHA). Courts in this Circuit have also applied this principle to find a plaintiff entitled to tort and punitive damages in addition to compensatory damages in Section 11(c) actions.[7] *See, e.g.*, *Milford Sports Bars*, 2023 WL 10509599, at *7-9 (awarding back pay, interest, emotional distress damages, earned compensation, and punitive damages for violations of Section 11(c)); *Champagne Demolition*, 2017 WL 3641629, at *3-4 & n.6 (ordering a jury trial to resolve compensatory, emotional, and punitive damages, and collecting out-of-circuit cases).

Defendants acknowledge that "district courts have the authority to 'grant summary judgment as to damages for which there exist[ ] no disputed issues of material fact.'" Dkt. No. 94-7 at 18 (quoting *Hart v. Ricks Cabaret Int'l, Inc.*, 60 F. Supp. 3d 447, 474 (S.D.N.Y. 2014)). Defendants argue, however, that an award of damages is inappropriate because they are not liable,

---

[7] Although it appears that the Second Circuit has not yet ruled directly on the issue, it has cited with approval *Reich*'s analysis and holding "that 'all appropriate relief' under Section 11 . . . included money damages." *Tanvir v. Tanzin*, 894 F.3d 449, 468 (2d Cir. 2018), *aff'd*, 592 U.S. 43 (2020).

15

and if they are liable, then damages should be decided at a damages inquest or by a jury. Dkt. No. 94-7 at 18-19. In particular, Defendants contend that (a) a punitive damages award especially is solely within the province of a jury; (b) the Court should disregard Plaintiff's declaration in support of their damages request because the declaration is an improperly submitted expert report; and (c) Ms. Coolman has improperly failed to mitigate her damages. *Id*.

Plaintiff argues in Reply that "Defendants do not actually dispute the underlying material facts with any evidence" and observes that instead, "Defendants' primary opposition to these categories of damages is that OSHA Investigator Rhoades' declaration should be ignored as improperly disclosed expert testimony." Dkt. No. 97 at 9-10. After reviewing the submissions, the Court is not convinced that Plaintiff's "lay" Rhoades Declaration constitutes an expert report subject to Federal Rule of Civil Procedure 26(a)(2)(B), *cf*. Dkt. No. 94-7 at 19. *See United States v. Rigas*, 490 F.3d 208, 224 (2d Cir. 2007) ("A witness's specialized knowledge, or the fact that he was chosen to carry out an investigation because of this knowledge, does not render his testimony 'expert' as long as it was based on his investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise.") (quotation omitted); *see also United States v. Ortiz*, 536 F. App'x 127, 129 (2d Cir. 2013) ("At the end of the day, while the witness may have brought a more trained ear to the process, her testimony was based on her own investigation and perceptions, not on her specialized knowledge."). In *Rigas*, the Second Circuit held that an accountant's testimony constituted a lay opinion, and not impermissible expert testimony, "because it did not address what the appropriate accounting technique should have been, but was instead simply offered to show what the amount of the debt would have been had the fraud not occurred." *United States v. Cuti*, 720 F.3d 453, 460 (2d Cir. 2013) (citing *Rigas*, 490 F.3d at 225). Similarly, here the Rhoades Declaration seeks to explain what KELS would have

16

paid Ms. Coolman without the violations alleged by Plaintiff. Mr. Rhoades is undeniably more familiar with the calculations he discusses in light of his job, however that does not render his performance of the damages calculations or explanations as to how he reached certain sums expert testimony under Federal Rule of Evidence 702. *See* Fed. R. Evid. 701 (lay "testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702"). As such, the Court could use the Rhodes Declaration to determine certain compensatory damages that Defendants owe at this juncture.[8]

On the other hand, Plaintiff's request for emotional distress damages and punitive damages is best determined at a damages inquest.[9] There are questions of fact around those damages which Defendants have directly cited or at least referenced, which have not been resolved by the Court's determination of Defendants' liability. Specifically, Defendants argue that Ms. Coolman may have had pre-existing psychological conditions which may have been exacerbated, as opposed to caused, by Defendants' wrongful conduct. *See, e.g.*, *Acosta v. Champagne Demolition, LLC*, No. 1:12-CV-1278 (FJS/TWD), 2017 WL 3641629, at *4 & n.6 (N.D.N.Y. Aug. 21, 2017) (finding it appropriate to have a jury trial on Section 11(c) claims for emotional distress and punitive damages

---

[8] Plaintiff is correct that Defendants have largely not responded to Plaintiff's statement of material undisputed facts with facts of their own, and instead only attack the Rhoades Declaration. Dkt. No. 97 at 10-11 (citing Dkt. No. 94-7 at 18-19); *see* Dkt. No. 94-8 at 11-17. Despite this impropriety, in light of the Court's determination that the Rhoades Declaration is not an improperly submitted expert declaration, Defendants will be allowed a further attempt to refute the substance of Plaintiff's compensatory damages assertions, including with respect to the mitigation issue, at the forthcoming damages inquest. *Cf.* Dkt. No. 97 at 11 (citing, *inter alia*, *Solis v. SCA Rest. Corp.*, 938 F. Supp. 2d 380, 402 (E.D.N.Y. 2013), a Fair Labor Standards Act case in which the court awarded damages following a bench trial).

[9] And possibly by a jury unless both parties consent to conducting the inquest before the Court.

which are "legal remedies . . . in addition to, and different from, any equitable remedy that the Court could order").[10]  Defendants also argue that Ms. Coolman insufficiently mitigated her damages, which presents a disputed question of fact as to her compensatory damages.[11]  Dkt. No. 94-7 at 18; Dkt. No. 94-8 at ¶¶ 99-100; *see Sharkey v. J.P. Morgan Chase & Co.*, No. 10cv3824 (DLC), 2018 WL 1229831, at *11 (S.D.N.Y. Mar. 5, 2018) (granting a Rule 50 motion and ordering a new trial as to compensatory and emotional distress damages in an OSHA retaliation case where mitigation was at issue); *cf. Milford Sports Bars*, 2023 WL 10509599, at *9 (awarding $200,000 in punitive damages for violations of Section 11(c) following a grant of default judgment against defendants).  Ultimately, because it would be inefficient for the court to determine damages in this matter piece-meal and Defendants have not substantively argued the specific components of Plaintiff's requested compensatory, emotional, or punitive damages, the full question of damages will be addressed at a forthcoming damages inquest, to be scheduled consistent with this Order.

Finally, Plaintiff's request for costs in an amount to be determined later, Dkt. No. 92-1 at 29, is premature because issues of damages must still be litigated and judgment has not been entered.  Accordingly, this request in Plaintiff's Motion is denied without prejudice to renewal.

---

[10] Notably, Plaintiff's cited example on this issue, *see* Dkt. No. 97 at 12 n.8 (citing *Miner v. City of Glens Falls*, 999 F.2d 655 (2d Cir. 1993)), awarded emotional distress damages following a two-day damages bench trial, not at summary judgment. *Miner*, 999 F.2d at 659, 662-63. Plaintiff's cited example for an award of punitive damages at summary judgment fairs no better. *See* Dkt. No. 97 at 14 (citing *Mathie v. Fries*, 121 F.3d 808, 811, 815-17 (2d Cir. 1997), in which the Second Circuit approved the award of punitive damages following a bench trial, but reduced the award amount from $500,000 to $200,000).

[11] Indeed, Plaintiff did not address this issue on Reply other than to note the lack of record citation, *see* Dkt. No. 97 at 10-13, and the Court would benefit from additional briefing on this issue as it applies to the claimed Section 11 damages, *see, e.g.*, *Donovan*, 562 F. Supp. at 554 (observing that "OSHA does not incorporate a statutory duty to mitigate damages as does Title VII").

**D.     The Report-Recommendation**

As neither party has objected to the Report-Recommendation, and the time to do so has elapsed, this Court reviews the Report-Recommendation for clear error. In reaching his recommendation, Magistrate Judge Stewart considered each of the elements that courts in the Second Circuit use to determine if a person may be held in contempt for failure to comply with a discovery order. Dkt. No. 90 at 3-4 (citing, *inter alia*, *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004); Fed. R. Civ. P. 37; 28 U.S.C. § 636(e)(6)(B)(iii)). After certifying that sufficient facts exist to establish a finding of contempt and noting Dr. Kwiat's steps since June 2023 to comply with Court orders, Magistrate Judge Stewart recommended that the District Court hold Dr. Kwiat in contempt and impose a fine of $1,250. *Id*. at 4-7. Having reviewed the Report-Recommendation for clear error and found none, the Court adopts the Report-Recommendation in its entirety.

**IV.    CONCLUSION**

Accordingly, the Court hereby

**ORDERS** that Defendants' motion for summary judgment, Dkt. No. 91, is **DENIED in its entirety**; and the Court further

**ORDERS** that Plaintiff's motion for summary judgment, Dkt. No. 92, is **GRANTED with respect to liability** as to both Defendants and the requested injunctive relief, and **DENIED with leave to renew with respect to damages and costs**; and the Court further

**ORDERS** that the parties shall confer and provide a joint status letter to the Court within thirty (30) days of this Order including: (1) whether they consent to conducting the damages inquest before the Court rather than a jury; and (2) a proposed briefing schedule on the issue of damages and a proposed hearing date, or the parties' respective positions; and the Court further

**ORDERS** that Defendants Dr. David Kwiat and Kwiat Eye and Laser Surgery, PLLC are hereby **ENJOINED as follows**: Defendants shall not commit any additional violations of section 11(c) of OSHA, 29 U.S.C. § 660(c); Defendants shall purge all references to Ms. Coolman's illegal termination from her personnel records; Defendants and their agents shall refrain from any attempts to hinder Ms. Coolman from securing another job; and Defendants are required to post an OSHA notice in their employee break room for a period of at least 90 days; and the Court further

**ORDERS** that the Report-Recommendation, Dkt. No. 90, is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Defendant Dr. Kwiat is to pay a **contempt fine of $1,250.00** to the Clerk of Court, due and payable immediately; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 6, 2024
Albany, New York

*/s/ Anne M. Nardacci*
Anne M. Nardacci
U.S. District Judge